The last case this afternoon is the Avandia Marketing case. I believe we have... Ms. Wolfe, how are you? Good afternoon. I'm just fine, thank you. Whenever you're ready. Good afternoon, Your Honors. Randy Wolfe from the Law Firm of Spector, Gadden & Rosen. I'm here representing Appellant Michael D. Greer, Esquire, and the Law Firm of Greer, Russell, Dent, & Mothers, PLLC. With the Court's permission, I'd like to reserve three minutes for rebuttals. Sure. Thank you very much. Your Honors, we submitted briefs and they were extensive, and we raised any number of points of error. What I'd like to do today, with the Court's permission, is focus on a few of the key points that we raised. This case comes to this Court in a rather odd procedural posture. We are here on a dispute that involved a post-settlement motion seeking indemnification by one party against its co-defendant or co-party on grounds, as argued by ATG below, that Mr. Greer and his law firm were the parties actually responsible or liable on a motion for contempt, and that ATG, in its argument, was not the party liable on the motion for contempt. Below, when the motion for contempt was filed, Mr. Greer appealed, excuse me, appeared and opposed the motion for contempt. He filed papers in opposition. He raised all of his defenses. The motion for contempt alleged that both Mr. Greer and ATG had engaged in identical behavior. There was no distinction in the motion for contempt. Nevertheless, ATG didn't defend. It didn't file any papers in opposition. It did not raise any defenses, and most importantly, it did not raise any kind of cross-claims against Mr. Greer. The motion for contempt had a very brief hearing, and then it was settled. So there was a settlement agreement, right? That is correct, John. There was a written settlement agreement that everybody signed. That is correct, John. And that was shortly after the hearing with the district court, correct? That is correct. So at the time of the settlement, the motion, the contempt record remained open. The district court made no findings of fact, no conclusions of law. The allegations that were raised in the contempt motion that were directed equally to Mr. Greer and to ATG were never determined. They were unproven allegations with no resolution whatsoever. But they were settled, correct? They were settled in full. And you signed an agreement, signed a CSA, right? A contempt settlement agreement. Well, that is correct. A settlement was reached. The court made no findings of fact. Now, after the settlement was reached and fully concluded, ATG then filed in the district court a motion, not a complaint, but a motion. For indemnification. Correct, Your Honor. Yeah, but before that, before, you're missing a key step here, I think, in your argument. Before you, ATG filed the motion for indemnification, contribution, and et cetera, you submitted the settlement agreement to the district court. Well, that is correct, Your Honor. GlaxoSmithKline actually submitted the settlement agreement. And you had notice of that? That is correct, Your Honor. And ATG had notice of that? That is correct. Okay, and the district court reviewed the settlement agreement? It did. And it entered an order approving the settlement. However, the settlement agreement itself and its terms were never incorporated into any form of the court. No, but the court specifically said in that order that they were going to retain jurisdiction over that agreement for six months. If I may respectfully, Your Honor, the court's order, and it is contained in our appendix, did not state that the court was retaining jurisdiction over the settlement agreement. What about the dispute? The court retained jurisdiction over the dispute. Over the dispute. It is the subject of this confidential settlement agreement. Well, that's right. For a period of six months. I stand corrected on saying agreement versus dispute. Thank you, Your Honor. The dispute that was the subject of the confidential settlement agreement was the GlaxoSmithKline allegation made equally against ATG and Greer that ATG and Greer had mishandled settlement monies. And the reason that the court retained jurisdiction over that claim for six months was because part of the underlying contempt allegation was that there were liens that remained to be paid on behalf of the settling plans. And the court wanted to ensure that those liens were ultimately resolved. The key that I want the court to be aware of is that in that underlying dispute that the district court retained jurisdiction over for six months, there were no cross claims raised by ATG against Greer. The retained jurisdiction contemplated further controversies and decisions. Why do you retain jurisdiction? But, Your Honor, the claims were settled. The GlaxoSmithKline claims were settled. Yeah, but when you retain jurisdiction, you retain jurisdiction because you anticipate that there can be further issues that have to be resolved. That's why we retain jurisdiction. Well, in this particular instance, Your Honor, the district court retained jurisdiction in order to ensure that liens that GlaxoSmithKline alleged had not yet been paid on behalf of the claimants. The underlying of ANDEA drug claimants, that those liens were then paid. But the retention of jurisdiction, as it were, the order is not limited to anything. The district court retained jurisdiction, not limited to resolving any lien with respect to plaintiffs. I follow what you're saying, Your Honor, but at the time the judge retained jurisdiction, there were no cross claims of any type. Okay, so what? I'm putting that question to you. So what? You ended up back on the motion of ATG. ATG, that's where you were and that's where you are today. Tell us what the absence of a cross claim means. Well, my point is simply that because there was no cross claim filed in the underlying GlaxoSmithKline claim, the court never retained jurisdiction over any cross claim. But be that as it may, Your Honor, when... But had a claim been filed, the court would have had jurisdiction? If a cross claim had been asserted, but it was not. Okay. If I may continue, the court then permitted ATG to go ahead and file its motion for indemnification. And that claim for indemnification specifically sought indemnification against the claims that GlaxoSmithKline had asserted that were directed equally to Mr. Greer and to ATG. That's okay. Part of your mistake was, perhaps, is that you agreed to have this determined under Delaware law. Well, Your Honor, that was part of the underlying master settlement agreement and the underlying orders that had led to the contempt application. And then it was also part of the settlement agreement. Yeah, but that got you into the equation of active versus passive tort cases. I disagree entirely, Your Honor. Although the district court here, in this case, determined, made a determination on active versus passive tort cases. Well, they did it under Delaware law, right? But our position, Your Honor, is that the district court erred in holding that Delaware law permits recovery between joint tort cases. You're not arguing that they should not have used Delaware law. That's right, Your Honor. You're arguing that they misinterpreted Delaware law. That's right, Your Honor. And there's a long series of cases that go back and forth on what Delaware law is, correct? Well, that is correct, Your Honor. And we are relying particularly upon the Diamond State Telephone Company versus University of Delaware decision at 269A.2.52, where the Delaware Supreme Court found that the superior court in the Ioneary decision, which was the decision relied upon by the district court, the Delaware Supreme Court found that the superior court had erred. Because there was a workers' compensation plan. Your Honor, although it was a workers' compensation case, that particular fact scenario is irrelevant to the Supreme Court's holding as to whether Delaware law recognizes a tort feasor's ability to recover indemnification on an active versus passive or a primary versus secondary basis. And in fact, what the Supreme Court held in Diamond State Telephone was that once you go down the road of looking at two joint tort feasors, which it was alleged that ATG and Greer were, once you go down the road of saying we have two tort feasors, they're both alleged to have engaged in some type of wrongful conduct. But then we're going to make a determination as to whether one was primary or one was secondary, whether one was passive, one was active. What the Supreme Court said in Diamond State Telephone is that what you're really talking about is contribution between two joint tort feasors. Because you're talking about two tort feasors that both engaged in wrongful conduct. And if you're going to start measuring whose conduct was more and whose conduct was less, what we're really talking about there is contribution. And the Supreme Court of Delaware said specifically, we think, however, that such may not be for the reason that to provide for indemnification in terms of primary and secondary or active and passive wrongdoing is to hold the two parties as joint tort feasors with the right of contribution running between them. As we pointed out under 19 Delaware Code 2304 and in Miller v. Ellis, this may not be under our law. That such parties must be treated as joint tort feasors seeking contribution, one from the other, is made clear by Slattery v. Merritt and that it includes cites. The Supreme Court then says, the court below is therefore in error in holding thine liable to the university on the basis of primary and secondary wrongdoing or active and passive negligence concurring to cause the injury. And that's the exact fact situation we have here, where Glasser, Smith, Klein had alleged that both ATG and Greer engaged essentially in identical behavior, identical wrongdoing. And ATG then came to the district court and said, after those claims were settled, ATG then came to the district court and said, effectively, even though we're both accused of being tort feasors or active tort feasors, we would like you now, post-settlement district court, to determine that we want really liable. It was actually Greer that was the liable party. All we did was follow Greer's instructions. And that was something that was alleged in the motion, but was never alleged in response to the Glasser, Smith, Klein claims, which were settled. What are you asking us to do? I'm asking you, Your Honor, to vacate the judgment that was entered at the end of the case in favor of ATG and against Mr. Greer. And I'm asking that the district court's order granting the ATG motion be reversed and that the motion itself be denied and dismissed. You really got me lost here in this argument. I have a feeling, if you don't mind me saying so. I wasn't in this case before, but I picked up the piece and read it. It was like coming into the middle of a movie to try to grasp what was going on. And we had that feeling as well, Your Honor, when this was going on at the district court level. Because we went from a contempt case that was settled to, months later, a motion that was then permitted to proceed on ten days' notice. We were given seven days to file opposition and we were ordered to appear ten days later and try. I'm sort of a Judge Greenberg. You came in the middle of this movie here. Before that, you thought you had a deal and you gave instructions to accomplish the deal. Then you didn't have a deal and you settled the deal. And then you're back in court. I'm like with Judge Restrepo. What do you want us to do? You want us to send it back? Do you want us to order contributions that have been done to me? No, Your Honor. Because as a matter of law, there cannot be contribution. Because of what? Well, the district court here found that there are grounds for legal contribution under the Delaware Joint Tort Fees and Contribution Act. But there's two reasons primarily why. Well, there's really three. The first being that ATG never demanded contribution. They constantly, and from minute one when they filed their motion for indemnification, demanded 100% indemnification from Mr. Greer. And in fact, that's what the district court ordered. The district court ordered full indemnification. So what do you want us to undo? The indemnification order and send it back for? No, Your Honor. I would like this court to actually, on the record before it, which there was a full trial, deny the motion for indemnification under Delaware law. Which precludes indemnification between joint tort feesers and under the Delaware Joint Tort Fees and Contribution Act. Now, didn't the specific motion that ATG filed ask for contribution? It did not ask for legal contribution under the Joint Tort Fees Act. And that was what the district court held that ATG was entitled to. It did not ask for legal contribution under the Joint Tort Fees Act. It was because of a mistake in releasing the money. I mean, it wasn't like you're at a trial and you're saying, well, let's say if the plaintiff wins, the plaintiff wins. Now you have two defendants. You ask the jury which one is, you know, more guilty. But in this case, we gave instructions to, you know, release the money. So it's not a question of an original tort, but a contribution. I mean, that's the way I saw it. I don't know. And an additional reason that I see that I'm out of time, that there can't be contribution, is because the settlement agreement that resolved this claim states specifically that the settlement was paid for breaches of contract, not for any type of tort liability. So right there, you don't have a right to contribution between joint tort fees. I mean, I hear what you're saying, and I know what you wrote. And I sort of understand your legal positions here. But it seems like you've moved a little bit here, and you don't want to pay anything. Is that your position, you don't want to pay anything? Your Honor, I mean, I could explain something different that's not actually in the record. These parties were supposed to go to mediation after the settlement. And ATG then decided it didn't want to mediate. And from that moment forward, demand payment of the entire. And that's where it broke down. That's where it broke down. So you're fighting on whether or not they can get indemnification, contribution, or unjust enrichment. Their claim, ATG's claim, has always been since just before they filed their motion that they are entitled to 100% indemnification. All right, well, yeah, okay. Okay, I don't have any more questions. I guess I'm still puzzled as to what you want. Well, the district court entered a judgment against Mr. Greer. In a perfect world, what would you want? I would like the judgment against Mr. Greer vacated. I would like the ATG motion for indemnification. The order granting that motion to be reversed, vacated, and the motion denied. And what about the money? This money, what will you do about that? Well, ATG voluntarily paid the money in order to avoid entry of a judgment. Okay. Got it. Thanks. Thanks for your patience as you sat through all these arguments. Good afternoon. May it please the Court. My name is Anthony Haller with the law firm of Frank Grodin. And there are many points, but I'll get, I think, right to the heart of the matter. I'd like to start with jurisdiction. But before I go into the legal points, I think I'd like to start with the big picture. The big picture here is we have a district court with authority over mass tort litigation in a multi-district litigation with direct responsibility over a qualified settlement fund that she had set up and for which she had explicitly, under that document, continuing jurisdiction. So you can forget everything else in terms of argument, in terms of her jurisdiction. That document and her obligation under the Treasury Reg is to make sure that that money is used for its purpose. And what we have here, unfortunately, is the district courts taking seriously that obligation when confronted with the situation in which an officer of the court had engaged in self-dealing with respect to those funds. Is the district court's jurisdiction ancillary? Is that what you're arguing? No, it's not. It's not ancillary? It's not. It's directly under the settlement. It had jurisdiction over the… Greer and the Greer Law Firm, they're not named parties in this underlying advandia litigation. No, but they did agree to a settlement agreement. That's the question. I mean, they agreed to the settlement. It sounds to me like a contract. Right? The settlement agreement is a contract. The settlement agreement is a contract. Right. It's entered by the court. That lawsuit in which this fund was created did not involve either Greer or the Greer Law Firm. Well, yes, it did to the extent that the Greer and the Greer Law Firm had obligations with respect to the master settlement agreement. How does the court get jurisdiction? How does the court get jurisdiction over Greer? Isn't it ancillary? Well, it is ancillary to the original case. I'm sorry. I was asking you. In that respect, yes. I was asking you. In that respect, yes. It's ancillary. In that respect, you're correct, Your Honor. Okay. Okay. So not only did the court have jurisdiction to make sure that things were done correctly under… If I can interrupt, I just… It seemed to me that the parties were talking about jurisdiction not over the subject matter, but a personal jurisdiction, and the parties more or less admitted to it when they came to the agreement. Well, that's correct. But ATG was subject to personal jurisdiction by virtue of the qualified settlement fund, and the agreement, the settlement agreement that was entered by the court and over which the court retained jurisdiction with respect to the underlying dispute, gave the court both personal and subject matter jurisdiction, ancillary jurisdiction. I don't think there's any dispute that the court had jurisdiction. So then the question… I think there's a pretty good dispute. Yeah, there is a dispute. I don't think there's any reason to conclude that the court… You don't think there's any basis to the dispute? Well, I don't think there's a reasonable basis to say, given the agreement that was reached, which there was explicit agreement that the agreement itself said all disputes relating to the underlying problem and settlement agreement would be submitted to the NBL court. You could have filed a lawsuit here in the District Court in the Eastern District of Pennsylvania on this contract and alleged diversity jurisdiction. I don't think that would have been appropriate, Your Honor, because I think that the court itself had jurisdiction to make those decisions. What if the court didn't retain jurisdiction for six months? Well, if… What were the disputes? First of all, Your Honor, there was an agreement between the parties that any disputes relating to the settlement agreement would be decided by the NBL court. What if the court had not retained jurisdiction for six months over the disputes arising out of the agreement? Couldn't you have filed a suit in the Eastern District of Pennsylvania under diversity of citizenship to recover the money from where you're in this firm? The NBL… The NBL… The NBL… The NBL…  The NBL… The NBL… The NBL… The NBL… The NBL… Yes. Could have done that. So you could have gotten here. Could have gotten here, but that assumes that the court didn't retain jurisdiction. I understand that. I understand that. And so we're functionally in a position where there was an agreement between the parties that any disputes would be decided by the NBL court. And the NBL court retained jurisdiction. And importantly, it wasn't just over the settlement agreement. It was over the underlying subject matter of the dispute. And that gave the court the authority and jurisdiction to decide. And then having – once you get there, then the issues had to be raised by virtue of the motion. That's the way to do it. And that's the functional equivalent of a cross-claim in the procedural context that we faced. So I think that that sort of ends the matter. I'd like to briefly address the argument on Delaware law. The court properly determined that the common law of Delaware accepts the principle of a common law indemnification. And there are at least five circumstances in which the Delaware courts have recognized common law indemnification. Those were stated as recently as 2008 in the Legros case, which we've cited. There are two prongs which are directly applicable of that test, directly applicable to these circumstances. The first is where the one seeking indemnity has incurred liability as a result of an action at the direction in the interest of or in reliance of the one sought to be charged, which doesn't rely upon any distinction between passive or active tortfeasor. And the district court referenced that. So there would be an independent basis without regard to the dispute over active and passive for the determination to be made. And the district court didn't make that determination because ATG in this context was a functionary. It had the right to rely upon representations from the greater firm. And so long as they were believed to be genuine and sufficient, Mr. Gritt testified that what he told ATG about the agreement that he believed he had reached with KlaxoSmithKline was genuine and sufficient for them to rely on. So that would be a basis for common law indemnity. In addition, Delaware recognizes that where the one seeking indemnity has incurred liability as a result of mere failure, even though negligent to discover or prevent misconduct of the one sought to be charged, you're entitled to indemnity. But that's where you get into the debate about active versus passive tortfeasor. Now, if we look at what was actually said in the Diamond State case, to your point, Judge Fisher, the only thing that court said, it actually accepted the general principle. And then it said, but it doesn't apply when one of the parties, one of the joint tortfeasors, is subject to workers' compensation. That's the limited basis of the decision in the Diamond State Telegraph case. And in fact, the problem that I have with the argument on the other side is they actually miss, they fail to quote the qualifying language because the qualifying language in the brief, but it wasn't right here. Because what the court said was, as we have pointed out, under Delaware 19, Delaware C, Section 2304, Andy Miller versus Ellis, this may not be the law. So what are those two things? That's the workers' compensation statute and a case saying that workers' compensation is the exclusive remedy. So the court then goes on to say that, yes, we agree that it's proper that the principle be that you can have indemnity where both parties are liable to the same person for the joint wrong, but you can't have that in the context of a workers' comp case because there is no liability that you can now assert because of the strict liability statute. That's all that the court said in the Diamond Telegraph case. So the concept of common law indemnity, when you have, as the court found, clearly somebody that was at fault and another party that was not, is good law. It's been recently recognized in Delaware, and the court therefore did not either get it incorrect as a matter of law, and certainly there's great deference on the bench trial to the court's findings in respect of who was at fault. So I think that's subject to the Kirk-era standard. The appellant here raises the question, at least in their briefs, that under the Qualified Settlement Fund and under the agreement, that ATG had to have gotten GSK, GlaxoSmithKline, to have signed off on this payment direction. What about that? Did the district court take that into consideration? Yes, very much so. And how did the district court deal with that? Well, the district court made a finding of fact that the money would not have been paid, but for the communication that Mr. Greer made with respect to his asserted agreement with GSK, that that was really the core problem with what occurred. That ATG had the right under the Qualified Settlement Fund, Paragraph 18, to rely upon that representation. But Mr. Greer thought he had a deal. I understood, but it turns out he didn't have a deal. They would have said if ATG had gone to GlaxoSmithKline, they would have found out that perhaps he didn't have a deal. Well, I think when you look at indemnity, you have to look at what was said in the underlying proceeding. So I think it's very important that the court considers what Mr. Greer said in the contempt proceeding. So in the contempt proceeding, what Mr. Greer said was there was this original blocking agreement, whereby the bank, not ATG, where the bank was the one that shouldn't have disbursed monies without the joint statement from GlaxoSmithKline. ATG was the administrator. The bank was the one in the front. But that's the first problem here. Secondly, though, there was this August 22, 2012 agreement, in letter, that allowed the funds to be distributed, subject to the whole bank. And the funds were then distributed on a course of dealing that nobody disputes, where the Greer firm identified the monies to be paid. There were instructions given to the bank and the money was released. The blocking agreement was never used at any point for the disbursement of the funds. And as Mr. Greer pointed out in his testimony to the court in the contempt proceeding, JSK never actually signed the blocking agreement. So Mr. Greer's testimony is that the August 22 letter really superseded, that's what he said explicitly, superseded the blocking agreement. So there really was no basis, based on his own testimony, as the parties proceeded from August 22, 2012 forward, for there to be any real issue with respect to whether the blocking agreement should have been an effective document. It only became an argument after he was confronted with the indemnity petition. That's the problem. We've had a lot of shifting sands, as I'm sure the court picks up. And I'll sort of end with where we ended on the argument for the appellant, which is Mr. Greer doesn't want to pay. And that's what this has all been about. And in the context of this case, you have to, I submit, the court has to step back and say, not only who was at fault, that's what the district court did, but in relationship to the parties, ATG got a minuscule amount of money for its administrative services. Mr. Greer and his law firm got 50% of the total settlement. What the district court did here was to take seriously its obligations to make sure that the money in the qualified settlement fund was used properly. And when it found, and those findings require deference, it found that the money was taken improperly through an accident's representation, made a decision to assign blame where it should be. Judge Greer, do you have anything else? My pardon? Thank you very much. Thanks, Your Honors. I just have a couple of points. The first being that Your Honor previously asked, who pays the money under the settlement agreement that was reached here? And I would just like to note that ATG has never raised any breach of contract action here. This has, or claim, this has been since minute one, a claim for indemnification, a claim that ATG is entitled to 100% of the money that was paid out in settlement, which by the way was a true negotiated settlement. GlaxoSmithKline alleged that a much larger sum of money had been improperly distributed by not getting a sign-off than the number that was ultimately agreed upon as the settlement payment. I'd also like to point out, as counsel noted, that the real key here is to look at the contempt allegations that were made by GlaxoSmithKline in order to determine whether or not ATG is entitled to indemnification on those claims. And the key case out of Delaware that discusses this issue is the Legrone case, which was cited extensively in our papers. Legrone is factually, really, and procedurally identical to the case here, where you had in that case a plaintiff that alleged that multiple defendants had engaged in tortious behavior. The plaintiff's claims were settled in full, and post-settlement, one of the defendants, such as ATG here, went after a different defendant, such as Mr. Greer, alleging it was entitled to indemnification because defendant number one claimed, I wasn't really liable to the plaintiff. You, Mr. Greer, were the one that was really liable and responsible to the plaintiff. And what the Superior Court in Delaware said in the Legrone decision is that a settlement of a disputed claim does not establish the character or degree of fault of the settling party, or even whether the settling defendant is a joint tort feisal with previously settled defendants. The only available evidence, therefore, upon which to measure the nature of the putative indemnity's fault after settlement is the plaintiff's complaint in the underlying action. And what the Legrone court held was that you need to look at what the allegations were. In this case, what were GlaxoSmithKline's allegations directed to these alleged joint tort feisals to determine whether a right of indemnification arises. And here, GlaxoSmithKline alleged that ATG and Mr. Greer engaged in exactly the same wrongful, allegedly wrongful behavior. And then those claims were settled. And at that point... But didn't they allege that ATG failed to properly check? No. No, Your Honor. That only came up in the context of the trial on the indemnification motion. GlaxoSmithKline's claims, which were later, which were never proven, and in fact later evidence at trial indicated were incorrect, was that all of the money out of the settlement trust had been improperly distributed. In fact, what the evidence demonstrated was that all of the plaintiffs received exactly what they were entitled to receive. Mr. Greer received his fees as per his contingency fee agreements. ATG received its fees. Liens were paid. Other administrative fees were paid. All of the money went exactly where it was supposed to go. And I see that I'm now out of time unless the court has additional questions. Thank you very much counsel. Thank you very much.